2003 UT 4

Chad AHLSTROM and Stacy Ahlstrom, Plaintiffs and Appellees,

v.

SALT LAKE CITY CORPORATION and Michelle S. Ross, Defendants and Appellant.

No. 20010830.

Supreme Court of Utah.

Feb. 28, 2003.

Rehearing Denied July 20, 2003.

M. David Eckersley, Salt Lake City, for plaintiffs.

Steven W. Allred, Salt Lake City, for Salt Lake City Corporation.

Todd M. Shaughnessy, Salt Lake City, for Michelle Ross.

Allan L. Larson, Salt Lake City, for amicus West Valley City.

WILKINS, Justice:

¶ 1 Salt Lake City (the "City") appeals the district court's grant of the plaintiffs' (the "Ahlstroms") motion for summary judgment holding that Salt Lake City Police Officer Michelle Ross ("Ross") was acting within the course and scope of her employment when she was involved in an accident while driving a marked patrol car on her commute home to Tooele County. The Ahlstroms have alleged injuries caused by Ross's negligence in connection with the accident. The City contends it cannot be held vicariously liable as Ross's employer for the Ahlstrom's damages. We reverse the partial summary judgment and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 Ross was a Field Training Officer ("FTO") for the Salt Lake City Police Department in addition to her regular duties. At the time of the accident giving rise to this case, she was driving her marked patrol car home to Tooele County from an FTO meeting on an off-duty day. Ross had her infant son in the car with her while commuting from the regularly scheduled meeting. When attending such meetings, Ross was paid for either three hours or her time attending the meeting, whichever was greater. She was not compensated for either time driving to the meeting or mileage for the trip in the City's car. The City does not require her to commute in its car, but allows officers to use its cars under a take-home program whereby participating officers pay a small amount for the opportunity to drive a patrol car between work and home. The Department regulates use of the car by requiring certain items be kept in the car, requiring appropriate attire while using the car, and requiring the officer to monitor the radio and be ready to respond while driving the car. Officers are responsible for any citations received in the car while off duty. Furthermore, in the event of an emergency, off-duty officers participating in the program may be required to respond to calls.

¶ 3 While using the City's car, officers may, in certain situations, transport others in the car with them. Although certain passengers are allowed in the car, they must be dropped in a secure place before the officer may respond to an emergency. Officers are compensated for any time spent responding to calls. Though Ross was subject to being

called into duty while traveling home to Tooele in the patrol car, Ross has never responded or been asked to respond to a call while outside of Salt Lake County.

¶ 4 After reviewing these facts, the district court granted the plaintiffs' motion for partial summary judgment. The court agreed with the Ahlstroms that Ross's use of the City's car conveyed a benefit to the City and was under the control of the City. Citing requirements for officers' use of City vehicles, the court then noted that, "because Officer Ross can be called into duty by the mere happening of events in her presence, she is essentially always on duty, at least when operating a police vehicle."

## STANDARD OF REVIEW

¶ 5 In order to sustain a grant of summary judgment, there must be "no genuine issue as to any material fact and ... the moving party must be entitled to judgment as a matter of law." Utah R. Civ. P. 56(c). This court reviews such a grant for correctness, viewing "the facts and inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Peterson v. Coca-Cola USA*, 2002 UT 42, ¶ 7, 48 P.3d 941 (internal quotations omitted). This standard is somewhat complicated in this case because determinations about whether an employee is acting within the scope of employment are questions of fact. *See State Tax Comm'n v. Indus. Comm'n of Utah*, 685 P.2d 1051, 1052 (Utah 1984) (noting "course of employment" is question of fact in worker's compensation cases). Nevertheless, in this case the facts are undisputed and we review such matters for correction of error. *See Drake v. Indus. Comm'n of Utah*, 939 P.2d 177, 181 (Utah 1997) (reviewing empirical facts for clear er-

ror but allowing no deference when evaluating the legal effect of those facts). Thus, in this case, we review the district court's grant of partial summary judgment for correctness.

## ANALYSIS

¶ 6 In order to hold an employer liable for the acts of an employee, the acts giving rise to the claim must be "within the course and scope of [the employee's] employment." *Whitehead v. Variable Annuity Life Ins. Co.*, 801 P.2d 934, 935 (Utah 1989). We have previously adopted the general rule that "an employee is not in the scope of his employment for purposes of third-party negligence claims when he is traveling to and from work." *Id.* at 936 (the "coming and going rule").

¶ 7 Attempting to augment the coming and going rule, the Ahlstroms also argue that the "special errand" and "employer-provided transportation" exceptions to the rule should be imported from our worker's compensation jurisprudence and applied to negligence cases like this one. However, cases addressing worker's compensation rules, even when the issue is the same, are of little use in answering the question now before us.[1]

### I. THE COMING AND GOING RULE AND COMMUTING POLICE OFFICERS

¶ 8 This case presents a unique application of the coming and going rule. A survey of opinions from other jurisdictions involving negligence cases brought against cities for accidents involving off-duty police officers driving city vehicles reveals that the coming and going rule is generally applied in those situations to prevent vicarious liability.

1. Although the coming and going rule was imported from our worker's compensation jurisprudence, we note that such portability, while sometimes appropriate, is not the rule in Utah.

Scope of employment questions are inherently fact bound. The scope of employment question arises in both worker's compensation and negligence cases but the method by which the question is answered is markedly different. We have said that the Worker's Compensation Act "should be liberally construed and applied to provide coverage. Any doubt respecting the right of compensation will be resolved in favor of the injured employee." *State Tax Comm'n*, 685 P.2d at 1053. Negligence cases require proof by the preponderance of the evidence that the employee was acting within the scope of employment. With very different presumptions governing worker's compensation and negligence cases, it would not be wise to hold that the rules governing scope of employment questions in one area are wholly applicable to the other because the legal effect of identical facts may be different in a negligence case than in a worker's compensation case.

*See Hanson v. Benelli,* 97–1467 (La.App. 4 Cir. 9/30/98), 719 So.2d 627 (refusing to hold city liable for commuting accident where officer had no unique skills that required on-call status); *Johnson v. Dufrene,* 433 So.2d 1109 (La.Ct.App.1983) (holding city liable for commuting accident where officer had special skills that required permanent on-call status); *Clickner v. City of Lowell,* 422 Mass. 539, 663 N.E.2d 852 (1996) (refusing to hold city liable for commuting accident where officer responding to page caused accident); *Erie Ins. Co. v. City of Columbus,* No. 79AP–815, 1980 Ohio App. LEXIS 10986 (Ohio Ct. App. May 8, 1980) (holding city liable for commuting accident where undercover officer's varied work environment led him to be on-call and at various locations around the city). We may glean from relevant opinions the conclusion that cities will not be liable for commuting officers' accidents in the absence of unique circumstances giving rise to a definite need for the officer to use the patrol car while off-duty. Thus, a mere benefit to the city, or the city's exercise of some control over the use of the vehicle, is not enough to overcome the general premises of the coming and going rule.

■ ¶ 9 "The major premise of the 'going and coming' rule is that it is unfair to impose unlimited liability on an employer for conduct of its employees over which it has no control and from which it derives no benefit." *Whitehead,* 801 P.2d at 937. This does not mean that if the employer derives *any* benefit or exercises *any* control over the conduct it will be liable. Rather, where an employee engages in conduct benefitting the employer or which is controlled by the employer, we weigh the benefit and control against the personal nature of the trip in order to determine where it is appropriate to place liability. Such an analysis harmonizes the general rule with its stated premise. Though not explicitly so, the surveyed opinions from other jurisdictions seem to follow this general framework.

¶ 10 Louisiana has split when faced with two cases involving commuting officers. In *Johnson v. Dufrene,* 433 So.2d 1109 (La.Ct. App.1983), an officer who had special training and exclusive access to vital records was involved in an accident while transporting his mother-in-law on personal errands in his department car. Because of his special skills and access, the officer was necessarily on-call twenty-four hours a day. The court in *Johnson* held that the city for which the officer worked could be held vicariously liable for damage caused by the accident. *Johnson,* 433 So.2d at 1113 (holding city liable because officer's accessibility was vital to department). The court was later called upon to decide whether the same city could be held vicariously liable for injuries sustained when an officer was making his way home from work-related parties. *See Hanson v. Benelli,* 97–1467 (La.App. 4 Cir. 9/30/98), 719 So.2d 627. In *Hanson,* the court held that the city was not vicariously liable because, although the officer was on-call twenty-four hours a day and the city received a benefit from his use of the city car, the officer had no special skills and was thus different from the officer in *Johnson. Hanson,* 719 So.2d at 634–35 (limiting *Johnson* to its unique facts).

¶ 11 The Supreme Judicial Court of Massachusetts has also declined to hold a city liable for damages caused by a commuting officer. *See Clickner v. City of Lowell,* 422 Mass. 539, 663 N.E.2d 852 (1996). In *Clickner,* an officer, who had been drinking, was driving his city car to work when he received a page from a subordinate. *Id.* at 854. In attempting to answer the page, the officer caused the accident for which recovery was sought. *Id.* The court thought the fact that the officer was using the vehicle for personal reasons, was intoxicated, had not yet begun his shift, and was not being paid meant that he "was not acting in the furtherance of the employer's business." *Id.* at 855.

¶ 12 In an unpublished Ohio decision, a district court of appeals held a city vicariously liable for an accident caused by an undercover officer on his way home from an assignment. *Erie Ins. Co. v. City of Columbus,* No. 79AP–815, 1980 Ohio App. LEXIS 10986 (Ohio Ct.App. May 8, 1980). Much like the *Johnson* case, this case involved unique facts and circumstances not present in the case now before this court. The officer in *Erie* was undercover and had been on an assignment where he had consumed some alcoholic

beverages to maintain his cover. *Id.* at 2. Driving the unmarked department car home from his assignment, he caused an accident. *Id.* at 2–3. The court took note of the circumstances under which the officer drove home and held that the city was vicariously liable for damages caused by the accident. *Id.* at 6–9 (holding city liable and noting that officer had no fixed place of employment, was required to secure the vehicle after his assignment, and, for convenience, drove to his home rather than the station).

¶ 13 The lesson of these cases[2] is that cities are not held liable for commuting accidents of officers in city cars unless there are unique circumstances that tip the balance from a personal trip to one that primarily benefits the department. In *Johnson* and *Erie*, those circumstances were present and liability was found. The police department in *Johnson* essentially required the officer to use its car while running personal errands in order to make him more accessible. In *Erie*, the officer's duties were such that he had no regular commute. Rather, his job required social activity while on duty. Because he was required to maintain the appearance of social activity, he took his unmarked departmental car home. The respective cities were not liable in *Hanson* and *Clickner* where the officers were not possessed of any special skills or engaged in special duties. The conclusion that liability should not attach unless there are unique circumstances is in accord with the stated purposes of the coming and going rule and we express no reservations with the application of the coming and going rule under the facts of this case. Having determined the coming and going rule applies, we now turn to the dual purpose exception and the exceptions suggested by the Ahlstroms.

## II.  THE DUAL PURPOSE EXCEPTION

■ ¶ 14 If an employee's personal conduct benefits an employer, we have implied that the employer may be held liable where the predominant purpose of the conduct was not personal. *See Whitehead*, 801 P.2d at 937 (noting application of coming and going rule depends upon benefit to and exercise of control by employer). *Whitehead* held that an employer was not liable for negligence of its employee while commuting home, despite the employee's intention to make business calls from his home that evening. *Id.* In making the determination that the employer was not liable, this court applied a useful test for determining whether business was the predominant purpose for the trip. The inquiry is "whether the trip is one which would have required the employer to send another employee over the same route or to perform the same function if the trip had not been made." *Id.* Although this is not the only method for evaluating the application of the dual purpose exception, it is instructive in this case.

¶ 15 Although the City received some benefit from Ross's trip home from work on the day of her accident, the facts before the trial court were not sufficient to make that benefit the predominant purpose of Ross's trip. Unlike the *Johnson* case, it did not appear vitally necessary to the City that she be accessible while on personal errands. There is no indication the City would have sent any one else on the trip had Ross not gone. Thus, it is apparent, based on the proof to date, that the benefits the City received from Ross's commute were only tangential to Ross's purpose of commuting home from work that day. Such tangential benefits are not enough to result in respondeat superior liability for the City under the dual purpose exception to the coming and going rule.

## III.  THE SPECIAL ERRAND EXCEPTION

■ ¶ 16 We address the application of the special errand exception and the employer-provided transportation exception not be-

**2.** While additional cases involving similar circumstances exist, they deal with issues that are inapposite to this case. *See, e.g., Tighe v. Las Vegas Metro. Police Dep't,* 110 Nev. 632, 877 P.2d 1032 (1994) (answering scope of employment question in worker's compensation setting); *Medina v. Fuller,* 1999–NMCA–011, 126 N.M. 460, 971 P.2d 851 (answering scope of employment question in determining whether different statute of limitations applied to bar suit); *Dobrowolska v. Wall,* 138 N.C.App. 1, 530 S.E.2d 590 (2000) (holding employee acting within scope of duties to immunize officer from individual liability).

cause we adopt them in negligence cases, but to show that the Ahlstroms, having proffered these possible exceptions, would nevertheless be unable to meet them even were we to approve their use in such cases. A special errand occurs "when the employee engages in a special activity which is within the course of his employment, and which is reasonably undertaken at the request or invitation of the employer." *Drake v. Indus. Comm'n of Utah*, 939 P.2d 177, 183 (Utah 1997) (quoting *Dimmig v. Workmen's Comp. Appeals Bd.*, 6 Cal.3d 860, 101 Cal.Rptr. 105, 495 P.2d 433, 439 (1972)). In *Drake*, we noted that one important factor in determining whether an employee was on a special errand was the " 'relative regularity or unusualness of the particular journey.' " *Id.* (quoting 1 Arthur Larson, *Larson's Law of Workmen's Compensation* § 16.11, at 4–204 (1996)). The proof advanced by the Ahlstroms is insufficient to meet this exception. On the day of the accident giving rise to this suit, Ross was attending a regularly scheduled meeting. The facts before the trial court indicate that although it was outside the normal duties of an officer, for a Field Training Officer such as Ross the meeting was part of her regular duties, and her commute to and from the meeting that day was not unlike her commute on any other duty day. Accordingly, the special errand exception would not be met under these facts, even assuming its application in negligence cases.

### IV. THE EMPLOYER–PROVIDED TRANSPORTATION EXCEPTION

■ ¶ 17 The other exception cited by the Ahlstroms in support of their claim against the City is what they term the employer-provided transportation exception, which also has its roots in worker's compensation cases. Under this exception, employers have been liable for injuries to their employees when they have required their employees to use the employer's vehicle. *See State Tax Comm'n*, 685 P.2d at 1053 (citing *Kinne v. Indus. Comm'n of Utah*, 609 P.2d 926 (Utah 1980) and *Bailey v. Indus. Comm'n of Utah*, 16 Utah 2d 208, 398 P.2d 545 (1965)). Under the facts before us, Ross voluntarily participated in an optional program that permitted her, for a fee, to commute in a car owned by

her employer. She was not required to use her employer's car for her commute home. Even assuming Ross was required by the City to use her police vehicle in this instance, the so called employer provided transportation exemption to the coming and going rule would only address injuries to Ross, not injuries alleged to have been caused by her.

### CONCLUSION

■ ¶ 18 The coming and going rule applies to bar vicarious liability against an employer for commuting accidents caused by employees. In the absence of unique circumstances, the rule applies with full force to police officers commuting in city owned vehicles. The Ahlstroms have failed to show that any exception to the coming and going rule as recognized in negligence cases applies. The partial summary judgment in their favor was inappropriate. Accordingly, we reverse the district court's grant of partial summary judgment and remand for proceedings consistent with this opinion.

¶ 19 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice RUSSON, and Judge ORME concur in Justice WILKINS' opinion.

¶ 20 Justice HOWE did not participate herein; Court of Appeals Judge GREGORY K. ORME sat.